GENERAL ACCIDENT & LIFE INSURANCE COM-
PANY, Appellant, v. OWEN BUILDING COM-
PANY, Respondent.

Kansas City Court of Appeals, February 12, 1917.

1. **INDEMNITY INSURANCE POLICY: Premiums: Cost of Building
   & Employees.** Three policies of indemnity insurance provided that
   on a certain basis of cost for employees and for cost of building to
   be estimated by the insured, the premiums were fixed at certain
   sums which the insured paid. But it was further provided in the
   policies that at the end of the insurance period, the insured and the
   company should audit the former's books and if the cost was found
   to have been more than the insured's estimate, additional premiums
   should be paid. Such auditing was made and the cost found to be
   more, and the insured refused to pay. It was *held* that he was
   liable.

2. ————: **Consideration: Contract: Evidence.** Parol evidence can-
   not be received to vary the premiums to be paid on an insurance
   policy on the ground of inquiring into the consideration where the
   face of the policy shows that such premiums have been made a
   matter of contract between the parties.

3. ————: **Policy: Unilateral Contract.** Though an insurance policy
   is signed by the insurer only, yet if it shows upon its face that
   the terms obligatory upon the insured are to be performed by him
   and that such was the intention of the parties, it will bind him as
   effectually as if he had signed. And the fact that the insured ac-
   cepts the policy and retains it in his possession concludes him on
   his intention to be bound.

Appeal from Jackson Circuit Court.—*Hon. Thomas B.
Buckner,* Judge.

REVERSED AND REMANDED (*with directions*).

*White, Hackney & Lyons* and *Leslie A. Welch* for
appellant.

*Haff, Meservey, German & Michaels* for respondent.

ELLISON, P. J.—Plaintiff's action was instituted to
recover judgment for unpaid premiums on three in-
demnity insurance policies issued by it to defendant.

There was a verdict for plaintiff. Afterwards the trial court sustained defendant's motion for a new trial and plaintiff appealed from that order.

It appears that it was stipulated in the policies that premiums should be calculated on the basis of a certain rate per $100 of wages paid by defendant to its employees, and on a certain rate per $100 of the total cost of the building. The estimates to be made by the defendant. It was however further provided that at the termination of the period of insurance the entire cost for employees and of the building should be audited, and if they exceeded the estimates made by defendant the latter should pay the additional premium on the above basis; but if the audit showed a less cost than defendant's estimate, then plaintiff would return the unearned portion of the premium. Defendant estimated the entire cost for employees would be $3000, and the entire cost of the building would be $50,000. Defendant paid on one policy as advance premium, $52, which was $1.75 per $100. On another policy it paid $15, being fifty cents per $100, and on the remaining policy defendant paid $87.50, being $1.75 per $100, of the cost of the building. All based on the defendant's advance estimate.

At the expiration of the policy periods plaintiff's auditor and defendant's president audited from defendant's books the actual cost during the life of the policies and found such cost to employees was $17,939.32. instead of defendant's estimate of $3000; and that the cost for erection of the building was $108,934.79, instead of defendant's estimate of $50,000. This action is for the premiums due on the basis of the cost as thus finally ascertained, credited by the advance payments made by defendant on its advance estimates.

Defendant offered to prove by the verbal testimony of its secretary that at the time when he agreed to take the policies, plaintiff's agents agreed with him that the advance premiums of $52, $15, and $87.50 based on defendant's estimate would be the total amounts for premiums to be due under the policies. This testimony was objected to by plaintiff on the ground that it would

vary, alter and contradict the written contract. The trial court sustained the objection and a verdict was rendered for plaintiff for its claim. Afterwards the court concluded its ruling was erroneous and for that reason granted a new trial, as we have stated.

In our opinion the trial court's first ruling was correct. It is fundamental law that, in the absence of fraud, accident or mistake, all prior contemporaneous agreements are merged in a written contract, which on its fact is complete. It being conclusively presumed that the parties have embraced in the writing all the terms of their final agreement. This, as a proposition of law, is not disputed by defendant, but it straightway sets out to nullify the rule by a course of suggestions and a reference to authorities which we think are not applicable.

First it is said that, in this State, agents of an insurance company of the character of those who transacted this business may waive conditions of the policy. But we think that fact does not touch the point involved. The question is not one of authority of an agent, it is one of evidence proposing to change the terms of a written agreement. It would be the same question had it related to the president of the insurance company himself. If he himself had been the active party in this affair the right to depend upon the written contract and to prevent a change in its terms, would be just as firmly fixed as it is with one lower down the scale. In Insurance Co. v. Mowry, 96 U. S. 544, an attempt was made to show that an insurance agent who procured the insured to take out a policy, promised before it was issued that the company would notify him in season to pay the premiums. Of this the court said (page 547): "But to this position there is an obvious and complete answer. All previous verbal arrangements were merged in the written agreement. The understanding of the parties as to the amount of the insurance, the conditions upon which it should be payable, and the premium to be paid, was there expressed, for the very purpose of avoiding any contro-

versy or question respecting them. The entire engagement of the parties, with all the conditions upon which its fulfillment could be claimed, must be conclusively presumed to be there stated. If, by inadvertenance or mistake, provisions other than those intended were inserted, or stipulated provisions were omitted, the parties could have had recourse for a correction of the agreement to a court of equity, which is competent to give all needful relief in such cases. But, until thus corrected, the policy must be taken as expressing the final understanding of the assured and of the insurance company.''

But defendant says that if the foregoing be conceded, yet, as the matter here involve relates to the consideration for the issuance of the policies parol testimony is admissible to show anything different from that which is expressed, though it contradicts, enlarges or restricts the writing. It is the rule that a recited consideration in an instrument may be shown not to be the real consideration. That rule is founded on the idea that the consideration is frequently mere matter of recital in which case it may be explained or contradicted. But there is neither law, nor reason why the consideration may not be as much a subject of contract as any other part of the agreement, and when the paper shows upon its face that it has been made a matter of contract it will be protected from assault by evidence *aliunde,* as any other contractual provisions. [Jackson v. Railroad, 54 Mo. App. 636; Laundry Co. v. Freudenstein, 179 Mo. App. 175; Stringer v. Mfg. Co., 177 Mo. App. 234; McDaniel v. United Railway, 165 Mo. App. 678; Pile v. Bright, 156 Mo. App. 301; Milich v. Armour, 60 Kansas 229; Fidelity Co. v. Flume Co., 161 Cal. 466, 474.] The law is expressed in these words in 6 Am. & Eng. Ency. of Law (2 Ed.), 775: ''When the statement of the consideration leaves the field of mere recital and enters that of contract, thereby creating and attesting rights, as shown by the intention of the parties to be gathered from the instrument, it is no longer open to contradiction by extrinsic evidence.'' And this is really

the effect of the decision in Halferty v. Scearce, 135 Mo. 428.

It would be difficult to find an instance in which the consideration for a contract has been more clearly made a subjcet of contract than the one before us. The parties have not only stated the consideration but have set out, in detail, the mode, or basis, upon which it shall be ascertained, and how it may be increased or diminished. Again, it is suggested by defendant that as these contracts of insurance were not signed by defendant, it should not be bound by the rule forbidding evidence contrary to or in alteration of the written agreement. We think that fact should not influence a nonenforcement of the rule. For though a contract whereby one party, for a stated consideration payable by the other party, promises on certain conditions to perform certain things, is only signed by the first party, yet if it is the intention that it shall bind both and it is received and retained by the other, it is binding upon him equally as though he had signed it. [Imp. Co. v. Towers Ex., 158 Mo. 282; American Pub. Co. v. Walker, 87 Mo. App. 503; Stone v. Pennock, 31 Mo. App. 544; Sunbury v. Aaron, 136 Mo. App. 222, 225.]

The acceptance and retention of the policies by defendant showed its intention to be bound and its intention to perform its part of the contract as therein specified. [American Ins. Co. v. Neiberger, 74 Mo. 167, 173; Robertson v. Ins. Co., 123 Mo. App. 248; Christenson v. Ins. Co., 160 Mo. App. 486, 500.]

The foregoing views lead to a reversal of the judgment and a remanding of the cause with directions to set aside the order granting a new trial, to reinstate the verdict and enter judgment thereon. All concur.